**Steve E. ENGLE, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 1282S501.**

Supreme Court of Indiana.

Sept. 5, 1984.

Steve E. Engle, pro se.

Terry O'Maley, Public Defender, Richmond, for appellant.

Linley E. Pearson, Atty. Gen., G. Douglas Seidman, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This is a direct appeal from a conviction of rape, a class B felony, Ind.Code § 35–42–4–1(a). The case was tried before a jury. The appellant elected to represent himself. Appellant was sentenced for a period of ten years plus five years for aggravating circumstances. Appellant raises six issues on appeal: (1) whether the trial court erred in denying his request for direct access to legal materials; (2) whether the trial court erred in denying his request for pauper counsel to prosecute an appeal of the denial of direct access to legal materials; (3) whether the trial court erred in admitting the testimony of Kansas State Trooper Jim Schrag on the issue of flight to avoid prosecution; (4) whether the trial court erred in denying the request for the appointment of an investigator at public expense; (5) whether the trial court erred in denying his motion to certify the necessity of testimony of out-of-state witness Allen Fohl; and (6) whether the evidence adduced at trial was sufficient to support his conviction.

These are the facts that tend to support the determination of guilt. The victim, a sixteen-year-old girl, testified that on August 8, 1981, shortly after midnight, she was sitting on her front porch in Connersville when the appellant, Steve Engle, pulled up in front of her house in a tannish Camaro. She had met him two times previously and knew him to be Steve Engle. Appellant asked her if she wanted to smoke some marijuana and if she would get him a beer. She agreed and brought him the beer, and got into the car to smoke the marijuana. Appellant drove off, claiming he needed to buy gasoline. He told her that he would take her home after buying the gasoline.

Appellant drove around to various gasoline stations but could not find one open. He then proceeded to drive out into the country. The victim did not try to escape because she was close friends with appellant's sister, and therefore trusted that appellant would keep his word to take her home. Appellant stopped at the uninhabited house of his uncle. Appellant parked the car on the grass in the back of the house. Appellant claimed there was something wrong with the car, he checked under the hood and then returned to the car.

After returning to the car he began to kiss and touch her, and then pulled her to the back seat. She resisted, yelling and crying as he pulled her overalls off. He slapped her and told her to shut up. He told her to get his penis hard, having already pulled his pants down to his knees. She told him to leave her alone. He held her down and had sexual intercourse with her.

After stating that he "must be going crazy", he took her home. When she came into the house she was crying. Her brother asked her what was wrong. She told him about the incident and he immediately informed their mother. Her mother took her to the police station where she reported the incident.

I.

Appellant argues that the trial court erred in denying his request for direct access to legal materials. Appellant filed a petition for a writ of habeas corpus on December 4, 1981. The trial court examined the petition and determined that it was in fact a petition seeking access to legal authorities. On December 28, 1981, a hearing was held upon the petition, and the matter was taken under advisement. On January 7, 1982, the trial court denied the petition upon the grounds that the appellant had stand-by counsel available to him, that the appellant by electing self-representation had imposed restrictions upon his access to legal materials, and therefore the Sheriff of Wayne County was not required to furnish appellant with legal materials.

Appellant contends that the trial court's decision undermined his right of access to the court and to self-representation.

■ Here, appellant chose to represent himself *pro se,* and as a result, the trial court appointed stand-by counsel to advise him in legal matters. Appellant had access to legal materials and legal advice through his stand-by counsel. Appellant claims that this appointment of stand-by counsel undermines his right to self-representation. We do not agree. Appellant was in charge of his case at trial. He had the option of requesting research material and the option of asking questions from his stand-by counsel. This arrangement did not undermine his right to self-representation, it merely provided him with the opportunity to improve the quality of his self-representation if he chose to do so.

■ The fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with law libraries or adequate assistance from persons trained in the law. *Bounds v. Smith,* (1977) 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72. Appellant's right of access to the court was not undermined. He had access to legal materials and legal assistance through his stand-by counsel.

The trial court did not err when it denied appellant's writ of habeas corpus for direct access to legal materials.

## II.

Appellant contends that the trial court erred in denying his request for pauper counsel to prosecute an appeal of the denial of direct access to legal materials. After the trial court's denial of appellant's motion for direct access to legal materials, he filed a notice of appeal, and affidavit of indigency, and a request for the appointment of counsel so that he could initiate an interlocutory appeal of the denial of the motion. The trial court determined that its ruling was neither a final judgment nor subject to an interlocutory appeal, and it denied his requests.

■ There is no due process right to an interlocutory appeal in this situation. Appellant must raise it on appeal after trial. The denial of this motion is no different from a denial of other pre-trial motions such as motions in limine, motions to suppress, etc. We do not allow interlocutory appeals from denials of these motions and we find no reason to allow one in this situation.

The trial court did not err in denying his request for pauper counsel.

## III.

Appellant contends that the trial court erred when the trial court admitted into evidence the testimony of Kansas State Trooper Jim Schrag on the issue of flight to avoid prosecution. On October 8, 1981, New Castle Police Officer Roy Young saw appellant at his brother-in-law's residence in New Castle. When Officer Young approached appellant, the appellant went into the residence. Officer Young received permission from appellant's brother-in-law to search the residence; however, appellant escaped before Officer Young could apprehend him. On October 14, 1981, while patroling Interstate 70 in Kansas, Kansas State Trooper Jim Schrag ran a computer check on vehicles at a rest area. He discovered that an Indiana vehicle which had appellant and his brother as occupants was stolen. Appellant falsely identified himself as Daniel Troy Helton by supplying a driver's license in Helton's name.

■ Evidence of flight from the scene of the crime is admissible. *James v. State,* (1976) 265 Ind. 384, 354 N.E.2d 236; *Bush v. State,* (1980) Ind.App., 401 N.E.2d 796. Appellant absented himself immediately from Connersville after the crime. When he was sighted by the New Castle Police, he eluded them, and it could be reasonably inferred that leaving Indiana was an attempt to flee from prosecution. Furthermore, appellant did not make a timely objection to the admission into evidence of the

testimony presented by Trooper Jim Schrag.

The trial court did not err.

## IV.

Appellant contends that the trial court erred by denying his motion for appointment of a private investigator at public expense. Appellant wanted a private investigator to locate alibi witness, Allen Fohl.

A defendant may represent himself if he so desires. In such a situation he must accept the burdens and hazards incident to his position. *Blanton v. State*, (1951) 229 Ind. 701, 703, 98 N.E.2d 186, 187. The specific burden appellant faces here is that his incarceration prevented him from conducting an investigation of his own case. The State has the right to incarcerate a person prior to trial in order to insure his presence at trial. Appellant's incarceration cannot serve as the basis of a right to a private investigator at public expense in this situation because he chose to dispense with court-appointed pauper counsel. Such counsel would have conducted an investigation of the case for him. Appellant's inability to have his case investigated is a self-imposed limitation. We will not hear him now complain of these burdens and hazards he could have easily avoided.

There is no constitutional mandate under the due process clause that one accused of a crime is entitled at public expense to any type of expert whose help in a particular case might be relevant. *Roberts v. State*, (1978) 268 Ind. 127, 373 N.E.2d 1103. The appointment of an investigator at state expense is a matter within the discretion of the trial court. A denial of a request for such an investigator will be reversed only for an abuse of discretion. *Yager v. State*, (1982) Ind., 437 N.E.2d 454.

There is no such abuse of discretion here. The trial court did not err.

## V.

Appellant contends that the trial court erred in denying his motion to certify the necessity of the testimony of out-of-state witness Allen Fohl. On June 10, 1982, the second day of the actual trial after the State had presented its evidence to the jury, appellant filed a motion for the trial court to certify alibi witness, Allen Fohl, as a material witness for the purpose of securing his attendance at trial. Fohl was residing in Florida. The trial court held a hearing on the matter and determined that it would not grant a continuance to secure the attendance of Fohl.

Appellant did not initiate the correct procedures to compel the appearance of his out-of-state witness until the trial was in process. As a result of the lateness of the request, it was evident to the trial court, as it must have been to appellant, that the goal of the procedure could not be achieved without a continuance of the trial, and the legal grounds for a continuance were not established. It would have been futile and therefore irresponsible for the trial court to have granted this motion and thereby to have forced the pointless expenditure of effort which that would have caused. Furthermore, the opportunity existed prior to trial to take the correct steps to compel the witness to appear. The ruling of the trial court was correct.

## VI.

Appellant argues that there was insufficient evidence of probative value upon which the jury could find beyond a reasonable doubt that he was guilty of the crime of rape.

In reviewing a challenge to the sufficiency of the evidence this Court does not weigh the evidence or resolve questions of credibility, but looks only to the evidence and reasonable inferences therefrom which support the verdict. *Smith v. State*, (1970) 254 Ind. 401, 260 N.E.2d 558; *Asher v. State*, (1969) 253 Ind. 25, 244 N.E.2d 89. The evidence in support of the verdict shows that appellant drove to the victim's house shortly after midnight. The victim got into appellant's car to smoke some marijuana and drink some beer. Appellant

drove off with her in the car under the pretense of needing to find a gas station. Appellant took her against her will out into the country and parked behind his uncle's abandoned house. Appellant pulled the victim into the backseat of the car, slapped her, removed her clothes, held her down, and had sexual intercourse with her against her will. Afterwards, appellant asked her not to tell the police. At trial the victim identified the appellant as the person who raped her.

▇▇▇▇ Appellant contends that the victim's testimony is not sufficiently probative to support the verdict in that her testimony is inherently incredible. Substantive evidence of probative value, such as is necessary to support a conviction, has qualities of directness and freedom from uncertainty. *Vuncannon v. State*, (1970) 254 Ind. 206, 258 N.E.2d 639. The victim's testimony was generally consistent and the jury found it believable. It is the task of the jury to weigh the evidence and to determine the credibility of the witness. *Taylor v. State*, (1981) Ind., 425 N.E.2d 141. Also in prosecuting for rape the uncorroborated testimony of the victim will be sufficient to support a conviction. *Johnson v. State*, (1982) Ind., 432 N.E.2d 1358. There was sufficient evidence to support the verdict beyond a reasonable doubt.

The judgment of the trial court is affirmed.

GIVAN, C.J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.