Kenneth KOEHLER, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 1185S454.

Supreme Court of Indiana.

Oct. 27, 1986.

Anne B. Coffman, Jeffersonville, for appellant.

Linley E. Pearson, Atty. Gen., Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Justice.

Today we deal with a "jailhouse lawyer" who realized his folly in electing self-representation but was prevented from correcting his mistake.

Appellant Kenneth "Robin" Koehler proceeded *pro se* before a jury against a charge of battery, a class C felony, Ind. Code § 35–42–2–1(3) (Burns 1985 Repl.). After the jury found him guilty of battery but before his habitual criminal hearing began, Koehler requested that his standby counsel take over the defense. The trial court refused his request, and Koehler continued to represent himself. He was found to be an habitual criminal, Ind.Code § 35–50–2–8 (Burns 1985 Repl.), and sentenced to a total of 38 years in prison. We reverse the habitual offender finding because we conclude Koehler was denied his constitutional right to counsel in that proceeding. We remand this cause for a new hearing on the habitual offender charge.

■ The evidence at trial showed Koehler cut the neck of his victim during a scuffle in his girlfriend's apartment. Koehler claimed he acted to protect his girlfriend. At Koehler's initial hearing on June 4, 1984, a public defender was ap-

pointed to represent him. Koehler was dissatisfied with that attorney's performance, so another public defender was appointed in his place. Still displeased with defense efforts, Koehler filed a motion to substitute counsel on January 24, 1985. It was denied. On March 11, 1985, Koehler moved to dismiss his attorney and proceed *pro se*. After a hearing, the court granted the motion and appointed a third public defender as standby counsel. Appointment of standby counsel is an appropriate prophylactic device when the defendant assumes the burden of conducting his own defense in a criminal trial. *Jackson v. State* (1982), Ind. App., 441 N.E.2d 29.

Koehler subsequently represented himself throughout the proceedings. He allowed the public defender to offer advice and occasionally handle motions or objections, but he conducted all examination of the witnesses. Koehler exhibited only a rudimentary knowledge of the law. His method of questioning was ineffective and often damaging to his case. For instance, he elicited testimony from several witnesses concerning his criminal record and his release from prison only four days before this incident. His questions were frequently ambiguous and repetitive. Though the trial judge exercised monumental patience, she felt compelled to admonish Koehler for dilatory tactics.

After the jury returned the verdict of guilty, Koehler informed the judge that he could not adequately conduct his own defense in the habitual criminal proceeding. He requested that standby counsel represent him because she was familiar with the case, having counseled and accompanied him throughout his trial on the underlying offense of battery. The State objected, contending that Koehler had waived his right to counsel by proceeding *pro se* and thus had to bear the hazards of his choice. The trial court refused Koehler's request, and he represented himself during the habitual offender proceedings.

Koehler now claims that the trial court violated his Sixth Amendment right to counsel by refusing to appoint counsel for the habitual offender hearing. Appellee contends that Koehler's waiver of his right to counsel continued through the habitual offender stage and that his ineffective performance was just one of the "burdens and hazards" which a *pro se* defendant must accept after refusing representation by counsel, citing *Engle v. State* (1984), Ind., 467 N.E.2d 712. *Engle* involved a defendant who voluntarily defended himself throughout trial and then claimed inadequacy of counsel on appeal—quite a different situation than that presented here.

■ The Sixth Amendment of the United States Constitution and Art. I, § 13 of the Indiana Constitution guarantee the right to counsel at any critical stage of prosecution where counsel's absence "might derogate from the accused's right to a fair trial." *United States v. Wade*, 388 U.S. 218, 228, 87 S.Ct. 1926, 1932, 18 L.Ed.2d 1149, 1158 (1967). *See also, Pirtle v. State* (1975), 263 Ind. 16, 323 N.E.2d 634. The defendant has a right to counsel in a habitual offender proceeding. *Chewning v. Cunningham*, 368 U.S. 443, 82 S.Ct. 498, 7 L.Ed.2d 442 (1962).

■ Correlative to the constitutional right to counsel is the right of a defendant in a criminal proceeding to appear *pro se*. "The right to defend is personal. The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction. It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage." *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562, 581 (1975).

■ This right is absolute only prior to trial. *Russell v. State* (1978), 177 Ind.App. 138, 378 N.E.2d 872. A trial court on its own motion may terminate *pro se* representation and appoint counsel in the midst of trial when the court believes the defendant is unable to represent himself. *Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). Furthermore, it is within the trial court's discretion to allow a defendant to eschew counsel and represent

himself after trial has begun. *Russell v. State*, 177 Ind.App. 138, 378 N.E.2d 872.

The reverse situation is presented here. Only a few appellate courts have been faced with the case of a defendant who seeks to abandon his *pro se* defense after trial has begun and to reassert his right to counsel. *See, Annotation*, Accused's Right to Represent Himself, 98 ALR3d 13 (1980). Several states have determined that it is within the trial court's discretion to appoint counsel after a defendant begins the trial *pro se. See, Commonwealth v. Jackson*, 376 Mass. 790, 383 N.E.2d 835 (1978); *Smith v. State*, 150 Ga.App. 498, 258 S.E.2d 167 (1979); *People v. Elliott*, 70 Cal.App.3d 984, 139 Cal.Rptr. 205 (1977). The California appellate courts, for instance, will reverse a trial court's ruling on any midtrial requests for a change in representation only upon a showing of an abuse of discretion. This standard applies irrespective of whether the defendant sought to assume his own defense or to have counsel take it over. *People v. Elliott, id.; People v. Windham*, 19 Cal.3d 121, 137 Cal.Rptr. 8, 560 P.2d 1187 (1977).

... (R)elevant factors must be considered by the trial court in order for it to exercise a meaningful discretion in ruling on defendant's request to change from self-representation to counsel-representation.... Relevant factors should include, among others, the following: (1) defendant's prior history in the substitution of counsel and in the desire to change from self-representation to counsel-representation; (2) the reasons set forth for the request; (3) the length and stage of the trial proceedings; (4) disruption or delay which reasonably might be expected to ensue from the granting of such motion; and (5) the likelihood of defendant's effectiveness in defending against the charges if required to continue to act as his own attorney.

*People v. Elliott*, 139 Cal.Rptr. at 211.

■ Applying these factors to the case at bar, we conclude that it was an abuse of discretion to refuse Koehler's request for counsel. While Koehler had fired two attorneys, he made the decision to proceed *pro se* before trial and did not change his mind until trial on the battery charge had concluded. Koehler's stated reasons for requesting counsel at this late stage were legitimate; he acknowledged that he was unfamiliar with the legal intricacies of an habitual offender hearing and thus could not adequately defend himself. His poor performance during the battery trial supported his statement. Furthermore, Koehler's request came at an opportune moment between trial on the battery charge and the habitual offender proceeding. The State does not allege the appointment of counsel would have created any delay. No continuance would have been necessary because standby counsel was familiar with the case. Lastly, Koehler had failed miserably as defense counsel during the battery trial and there was no reason to believe he would have fared any better during the habitual proceeding.

■ The purpose of the Sixth Amendment guarantee of representation is to protect an accused from conviction resulting from his own ignorance of his legal and constitutional rights and to assure him the guiding hand of counsel at every step in the proceeding. *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). The policy underlying the correlative right of self-representation is personal autonomy; the defendant is the one who must suffer the consequences of his decision as to counsel, so he is entitled to choose his advocate—a lawyer or himself. *Faretta v. United States*, 422 U.S. 806, 95 S.Ct. 2525. In this case, Koehler belatedly recognized his own inadequacy as defense attorney and sought to forestall further damage by abandoning his own defense and relying instead on trained counsel.

It would be illogical to bar all opportunity for reasserting one's right to counsel once a defendant realizes his mistake in proceeding *pro se*. Such action would amount to closing the exits to a maze once the defendant admits he is lost within it. However, today's holding is limited to the rather special situation in which a defend-

ant with standby counsel already at his side desires to turn over his defense under circumstances which do not disadvantage any of the other participants in the trial. A different result may be possible when the defendant does not have standby counsel prepared to assume representation without an interruption of the proceedings and the defendant's reassertion of his right to counsel does not occur at a natural break in the proceedings. *See, e.g., Pickens v. State*, 96 Wis.2d 549, 292 N.W.2d 601 (1980).

Koehler raised seven other issues. We address those which do not concern the habitual offender hearing.

## I. Witness Interviews

Koehler filed a pre-trial motion to suppress the testimony of two State witnesses, his girlfriend and the victim. He contended that he had not been provided with their arrest records, although the State had been ordered at a pre-trial conference to provide them. The court denied the motion but agreed to order a short recess during trial if Koehler needed to review materials. The State provided the arrest records before the witnesses testified.

 Koehler claims on appeal that the trial court improperly denied his motion to suppress. He concedes the normal remedy for the State's failure to provide discoverable material is a brief continuance. Where the State's actions are blatant and purposeful and the defendant is prejudiced, the trial court may suppress the testimony to which the documents relate. Such a case is not presented here. The record indicates that the State provided four supplemental discovery responses, and the omission of the arrest records was inadvertent. Furthermore, Koehler was able to review the records before the witnesses testified; the records were discussed during both direct examination and cross examination. Thus, Koehler has not established prejudice which would warrant a reversal.

 He further claims that the testimony should have been suppressed because he was not given an "opportunity" to interview the two witnesses before trial. He requested a continuance immediately before their testimony, so he could interview them. The trial court refused to grant the continuance, noting that he had nearly 10 months to interview the witnesses. Koehler fired his two public defenders before they could interview the witnesses. He had no luck obtaining statements from the witnesses by telephone from the jail where he remained from his arrest until his conviction. The proper procedure would have been to schedule a deposition, which easily could have been accomplished by a public defender, if not by Koehler during his incarceration. His alleged inability to have his case investigated was a self-imposed limitation arising out of his decision to represent himself. *Engle v. State* (1984), Ind., 467 N.E.2d 712. Therefore, the trial court exercised appropriate discretion in refusing to suppress the testimony or to grant a continuance.

## II. Hearsay

 During trial the investigating officer testified to statements made by the victim to him. Koehler claims that testimony constituted inadmissible hearsay. Hearsay is an out-of-court statement offered to prove the truth of the facts asserted therein and thus resting on the credibility of a declarant who is not in court and is unavailable for cross-examination. *Taylor v. State* (1986), Ind., 496 N.E.2d 561. The victim testified during trial, so the officer's testimony was admissible.

## III. Impeachment

Koehler attempted to impeach the victim by questioning him about statements which he purportedly made to police at the scene of the crime and which were contained in a police report. The victim denied telling the police that Koehler forced himself into the apartment where the stabbing occurred. Referring to the report, Koehler responded, "Well, it says right here that a . . . ." The

State objected, contending that the cross-examination was improper because Koehler did not make the police report. The witness then testified that he believed he had never seen the police report, he did not write it or sign it, and the phrasing of the statements did not appear to correspond to his own manner of speech. The State objected to use of the report to impeach the victim. The trial court sustained the objection. Now Koehler claims his right of cross-examination was improperly curtailed.

■■■ Before a witness may be impeached on the basis of a prior inconsistent statement, a proper foundation must be made by directing the witness' attention to the statement, giving the substance of the statement, and stating the date, place and person to whom it was made. *Smith v. State* (1981), Ind., 414 N.E.2d 299. The defense failed to lay a proper foundation upon which to use the police report for impeachment. Furthermore, Koehler could have established the content of the victim's statement to police through the testimony of one of the investigating officers. Indeed, he called one officer to the stand after the victim completed his testimony. However, Koehler only asked the officer to authenticate the police report, not to relate the victim's statements to him. Therefore, the trial court did not improperly restrict Koehler's cross-examination of the victim.

## IV. Sentencing

Koehler next alleges that the trial court erred by refusing to grant his motion for continuance on the day of sentencing. On the day of conviction, the trial court set Koehler's sentencing for May 13. On May 12, Koehler escaped from the county jail. He eluded police until May 22. He was taken to the hospital for brief treatment before being returned to the courtroom for sentencing a few hours after his recapture.

Stand-by counsel arrived shortly after the hearing began, just as Koehler was explaining his lack of preparation. She proceeded to reiterate Koehler's request for continuance and make all other substantive motions, including one correcting inaccuracies noted by Koehler in the presentence report.

■■■ Koehler claims he was "unaware of when the proceeding was to be, that he was unprepared for the proceeding and that he wished a continuance." He suggests that he would have subpoenaed witnesses if he had known the date of the sentencing hearing. However, he does not list what witnesses he would have called nor how they would have altered the judge's imposition of sentence. Thus, Koehler has failed to show any prejudice. In any case, Koehler, through his own actions, engineered the change in the sentencing date. Any inconvenience or lack of preparation time occasioned by his escape cannot be claimed as reversible error.

## V. Closing Arguments

■■■ During closing arguments, the prosecutor told the jury that it could not consider punishment in rendering a verdict and that the judge "had many sentencing alternatives." Koehler claims that the remark violated the State's own motion in limine regarding penalties for the crime. He further argues that any reference to "sentencing alternatives" would encourage the jury to convict because it would be under the impression that the defendant would obtain judicial leniency at sentencing. This argument is without merit. The prosecutor's comment is a general statement of the law which is not only accurate but also proper, notwithstanding the order *in limine*.

## VI. Instructions

■■■ The court instructed the jury: These instructions do not contain any information concerning the penalties that should be imposed upon a conviction. It is now your decision to decide only the guilt or innocence of the Defendant, not the appropriate punishment, if any. The

law has been so written that you may make your decision without being influenced by the apparent severity or leniency of the sentence.

A person who is so convicted of a crime by a jury is sentenced by the Judge. In many cases the Judge has certain sentencing alternatives, which may include probation, judgment entered as a misdemeanor, restitution, short sentences, rehabilitation programs, etc. In other cases the law requires the Judge to sentence to a term of imprisonment that is either fixed by the law, or set by the jury. A person who is sentenced to imprisonment may, or may not, serve a full maximum sentence, depending upon future events which are beyond our present knowledge and control.

Therefore, in any case, when arriving at your verdict, you should not consider or speculate as to if the Defendant will have to serve time, or if so, how much actual time he will serve.

Koehler notes that the court was precluded from suspending any imprisonment to which Koehler was sentenced because he was on parole when he committed the present offenses. Ind.Code § 35–50–2–2(a)(2) (Burns 1985 Repl.). He claims the instruction was an inaccurate statement of the law because it included some sentencing alternatives for which he was not eligible. This instruction was correct as a general statement of law, though the court should not have suggested that probation was among the available sentencing alternatives. However, we cannot conclude that it was likely to have affected the jury's decision on Koehler's guilt or innocence of battery.

The judgment of the trial court with respect to the battery conviction is affirmed. The habitual offender finding is reversed, and this cause remanded for a new hearing in accordance with this decision.

GIVAN, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.