**Antwain HENLEY, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 82A05–0508–PC–480.

Court of Appeals of Indiana.

Oct. 30, 2006.

Susan K. Carpenter, Public Defender of Indiana, Anne–Marie Alward, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, J.T. Whitehead, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MAY, Judge.

Antwain Henley appeals the denial of his petition for post-conviction relief ("PCR"). One of the issues he raises is dispositive.[1] Henley asserts his direct appeal counsel provided ineffective assistance by failing to

---

1. In his PCR petition, Henley alleged he is mildly mentally retarded. He urges us to reconsider two issues decided against him on direct appeal in light of the "extraordinary circumstances" of this mild mental retardation and his *pro se* representation at trial. *See State v. Huffman*, 643 N.E.2d 899, 901 (Ind. 1994) (revisiting prior decision to correct error when extraordinary circumstances exist, initial decision was clearly erroneous, and manifest injustice would otherwise result), *reh'g denied*.

Henley argues being required to wear a stun belt during the trial prejudiced him. Our Indiana Supreme Court has since decreed "stun belts may not be used on defendants in the courtrooms of this State." *Wrinkles v. State*, 749 N.E.2d 1179, 1194 (Ind. 2001), *cert. denied* 535 U.S. 1019, 122 S.Ct. 1610, 152 L.Ed.2d 624 (2002). We do not address this issue because it will not occur on retrial.

Because we remand, we also need not address his second *Huffman* claim: whether, because of his mental retardation, he was incapable of knowingly, intelligently and voluntarily waiving his right to counsel at trial.

The trial court on remand will determine this if Henley requests permission to proceed *pro se*.

In light of our reversal, neither do we need to address Henley's two additional grounds for ineffective assistance of appellate counsel: failure to assert on appeal the trial court erred by failing to consider his mild mental retardation as a mitigating factor for sentencing and failure to assert on appeal the evidence was insufficient to support the attempted murder conviction.

Nevertheless, we note that in response to Henley's argument regarding the sufficiency of the evidence of attempted murder, the State argued that because "the nine-hundred and eighty page record prepared by [Henley's] appellate counsel included the above noted evidence supporting [Henley's] conviction for attempted murder, [Henley] can not show that the outcome of his appeal was affected by the omitted argument." (Br. of Appellee at 16.) Had we addressed the sufficiency argument on the merits, we would have declined the State's apparent invitation to hold effectiveness of appellate counsel may be measured by the amount of paper submitted.

challenge the trial court's summary denial of Henley's request that standby counsel deliver closing arguments. In light of the precedent available to counsel at the time of the appeal, this issue was significant, obvious, and stronger than the other issues raised on appeal, and appellate counsel did not have a reasonable strategic explanation for failing to raise the issue. Thus, appellate counsel's performance was deficient. In addition, there is a reasonable probability the result of Henley's direct appeal would have been different, *i.e.*, Henley's conviction would have been reversed and the case remanded for a new trial, such that Henley demonstrated he was prejudiced by counsel's deficiency. Accordingly, appellate counsel was ineffective, and we reverse and remand for a new trial.[2]

## FACTS AND PROCEDURAL HISTORY[3]

In the early morning hours of August 8, 1998, Tiffany Moorman and Tashieka Douglas were driving in Evansville and asked Henley and Kenya Swanigan for directions to Walnut Street. Henley and Swanigan offered to show them the way and climbed into the girls' car. Henley then pulled a gun and demanded money. He shot out the back window of the car and ordered the driver to park behind a building. Henley and Swanigan ordered the women out of the car, made them remove their clothing, took their jewelry, and forced them into the trunk of the car. Henley warned them to be quiet. Henley and Swanigan got back into the girls' car and drove away.

When police stopped the vehicle, Henley fled on foot. Officer David Molinet began tracking Henley with his canine partner Derrek. Derrek, who was on a fifteen-foot tracking lead, jumped into the back of a white van where Henley was hiding.[4] Henley fired four or five shots at Derrek and Officer Molinet before surrendering.

The State charged Henley with the attempted murder of Officer Molinet, a Class A felony,[5] two counts of kidnapping as Class A felonies,[6] two counts of robbery as Class B felonies,[7] carjacking as a Class B felony,[8] and criminal mischief as a Class D felony.[9]

The trial court appointed Dennis Vowels as Henley's public defender. Two weeks before trial, Henley requested new counsel. The trial court denied his request and Henley elected to proceed *pro se*. Vowels continued to serve as standby counsel.

During trial, Henley made various requests regarding standby counsel.[10] The

---

2. We heard oral argument on July 24, 2006 in Indianapolis. We thank counsel for their presentations.

3. We adopt the following abbreviations in citing to the various documents provided. "App." refers to the two-volume Appendix submitted in this appeal. "R." refers to the four-volume Record of Proceedings from the original proceeding. "PCR Tr." refers to the two-volume transcript of the two post-conviction relief hearings. "PCR Ex." refers to the three volumes of exhibits offered during the post-conviction relief hearings by Exhibit number and internal page number where necessary.

4. Although referred to as a van, the photographs introduced into evidence indicate the vehicle is more aptly described as a box truck.

5. Ind.Code §§ 35–41–5–1, 35–42–1–1.

6. Ind.Code § 35–42–3–2.

7. Ind.Code § 35–42–5–1.

8. Ind.Code § 35–42–5–2.

9. Ind.Code § 35–43–1–2. This charge related to Derrek, who died after Henley shot him.

10. Henley first requested the trial court allow Vowels to cross-examine witnesses for him as "co-counsel." (R. at 722.) Henley explained

following exchange occurred at the end of the final instruction conference:

[Court:] Are we ready for the jury?

[State:] Yes sir.

[Vowels:] Yes sir. You're going to have to tell the Judge before he brings the jury in. You will have to understand that I decide the content, not you.

[Court:] Mr. Henley.

[Henley:] You decide the content?

[Vowels:] I decide the content, not you. If you want me to do it, I'll be happy to do it, but you need to tell the Judge what you want.

[Henley:] Go ahead, Your Honor. Go ahead and proceed.

(R. at 816.) [11] Later, immediately before the jury returned to the courtroom for final arguments, the following exchange took place:

[Court:] Anything further before we bring the jury in?

[State:] No, Your Honor.

[Henley:] Your Honor, me and my lay counsel, Mr. Vowels, I'm going to let him close for [me].

[State:] I'm going to object.

[Court:] That's denied.

[Henley:] That's all right. I'll close. I'll close.

(*Id.* at 827.) However, Henley began his closing argument by stating, "Mr. Vowels

asked to share some of my time, I just want to make brief statement." (*Id.* at 854.) The trial court responded, "No, you're representing yourself, sir." (*Id.*)

The jury convicted Henley on all seven charges. The trial court sentenced him to a combined term of eighty years.

A different attorney represented Henley on appeal. Appellate counsel raised ten issues, which we restated as nine; we deemed four of those issues waived for failure to provide argument and legal authority. We affirmed Henley's convictions in *Henley v. State*, No. 82A01–9904–CR–141, 727 N.E.2d 39 (Ind.Ct.App. April 11, 2000).

Henley filed a *pro se* PCR petition in December 2000, which was amended by appointed counsel in June 2004. After a hearing, the post-conviction court denied Henley's petition on June 28, 2005. The relevant conclusions of law follow:

7. Henley claims he is entitled to relief because appellate counsel was ineffective because of the failure to raise the issue of Henley's mid-trial request to have standby counsel assume the defense. Henley did not make a mid-trial request to ask for standby counsel to take over. "There is no right to hybrid representation." *Coonan v. State* [269 Ind. 578], 382 N.E.2d 157, 161 (Ind.1978). Accordingly, the trial court informed Henley that he may

---

to the trial court, in a hearing outside the presence of the jury, he had "been up for two days, no sleep." (*Id.* at 721.) Because Henley stated he wanted to "remain in charge of the case," the trial court denied the motion. (*Id.* at 723.)

During his examination of the next witness, Henley again told the trial court he had "been up two days now, haven't had any sleep at all" and requested a one-day continuance. (*Id.* at 734.) The prosecutor objected, indicated the State was prepared to proceed with the case and noted he had not "been sleeping

particularly well either." (*Id.*) The trial court denied Henley's motion.

Henley concedes a *pro se* defendant does not have the right to hybrid representation. Accordingly, his argument is focused on his request that Attorney Vowels present closing arguments, not his earlier request related to co-representation or his request for a continuance.

11. In the context of Henley's previous requests and the trial itself, Vowels appears to have been referring to making closing arguments for Henley.

either proceed pro se and have standby counsel or ask for standby counsel to take over. Henley elected to proceed pro se with standby counsel. Therefore, appellate counsel was not ineffective for the failure to raise the issue of Henley's request to have standby counsel assume the defense. Therefore, the court finds that he is not entitled to relief on this claim.

\* \* \* \* \*

13. Henley claims he is entitled to post-conviction relief on the claim of ineffective assistance of trial counsel because the waiver of counsel was not knowing and voluntary and because the trial court refused to allow standby counsel to assume co-representation mid-trial. In a memorandum decision, the Indiana Court of Appeals held ... "that Henley's waiver of his right to counsel was knowing, intelligent and voluntary."

The court finds that the issue of waiver of counsel in this cause is *res judicata* and, therefore, Henley is not entitled to relief on this claim. In addition, Henley was not entitled to hybrid representation. Therefore, the court finds that Henley is not entitled to relief on his claim that trial counsel was ineffective when the trial court denied his request for mid-trial co-representation.

(App. at 139, 141.)

## DISCUSSION AND DECISION

■ Post-conviction proceedings are not "super appeals" through which convicted persons can raise issues they failed to raise at trial or on direct appeal. *McCary v. State*, 761 N.E.2d 389, 391 (Ind.2002), *reh'g denied*. Rather, post-conviction proceedings afford petitioners a limited opportunity to raise issues that were unavailable or unknown at trial and on direct appeal. *Davidson v. State*, 763 N.E.2d 441, 443 (Ind.2002), *reh'g denied, cert. denied* 537 U.S. 1122, 123 S.Ct. 857, 154 L.Ed.2d 803 (2003); *see also* Ind. Post–Conviction Rule 1(1)(a). Post-conviction proceedings are civil in nature, and petitioners bear the burden of proving their grounds for relief by a preponderance of the evidence. P–C.R. 1(5).

■ When a petitioner appeals the denial of post-conviction relief, he appeals from a negative judgment. *Curry v. State*, 674 N.E.2d 160, 161 (Ind.1996). Consequently, we may not reverse unless the petitioner demonstrates the evidence "as a whole, leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court." *Id.*

■ We accept the post-conviction court's findings of fact unless they are clearly erroneous, but we do not give deference to the post-conviction court's conclusions of law. *Davidson*, 763 N.E.2d at 443–44. On appeal, we examine only the probative evidence and reasonable inferences that support the post-conviction court's determination. *Conner v. State*, 711 N.E.2d 1238, 1245 (Ind.1999), *reh'g denied, cert. denied* 531 U.S. 829, 121 S.Ct. 81, 148 L.Ed.2d 43 (2000). We do not reweigh the evidence or judge the credibility of the witnesses. *Id.*

■ To establish a violation of the Sixth Amendment right to effective assistance of trial counsel, a defendant must establish the two components set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), *reh'g denied* 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984). *Wesley v. State*, 788 N.E.2d 1247, 1252 (Ind.2003), *reh'g denied*. First, a defendant must show defense counsel's performance was deficient. *Id.* This requires showing counsel's repre-

sentation fell below an objective standard of reasonableness and counsel made errors so serious that he was not functioning as "counsel" guaranteed to the defendant by the Sixth Amendment. *Id.* The objective standard of reasonableness is based on "prevailing professional norms." *Id.*

 Second, a defendant must show the deficient performance prejudiced the defense. *Id.* This requires showing counsel's errors were so serious as to deprive the defendant of a fair trial, *e.g.,* a trial whose result is reliable. *Id.* To establish prejudice, a defendant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is one sufficient to undermine confidence in the outcome. *Id.*

 "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." *Strickland,* 466 U.S. at 697, 104 S.Ct. 2052. However, "there are occasions when it is appropriate to resolve a post-conviction case by a straightforward assessment of whether the lawyer performed within the wide range of competent effort that *Strickland* contemplates." *Grinstead v. State,* 845 N.E.2d 1027, 1031 (Ind.2006).

 A claim of ineffective assistance of appellate counsel incorporates the *Strickland* standard, requiring a defendant to show both deficient performance and prejudice. *Bieghler v. State,* 690 N.E.2d 188, 192–93 (Ind.1997), *reh'g denied, cert. denied* 525 U.S. 1021, 119 S.Ct. 550, 142 L.Ed.2d 457 (1998). When we analyze claims based on a failure to raise issues, we must be especially deferential to counsel's decision because deciding which issues to raise on appeal "is one of the most important strategic decisions to be made

by appellate counsel." *Id.* at 193. The defendant must demonstrate "from the information available in the trial record or otherwise known to appellate counsel that appellate counsel failed to present a significant and obvious issue and that this failure cannot be explained by any reasonable strategy." *Ben–Yisrayl v. State,* 738 N.E.2d 253, 260–61 (Ind.2000), *reh'g denied, cert. denied* 534 U.S. 1164, 122 S.Ct. 1178, 152 L.Ed.2d 120 (2002) (internal citations omitted). In addition to being significant and obvious, the unraised issues must be "clearly stronger" than the issues counsel raised. *Bieghler,* 690 N.E.2d at 194.

 Even if appellate counsel's choice of issues was not reasonable, the defendant's claim will not prevail unless he can demonstrate a reasonable probability that the outcome of the direct appeal would have been different. *Thompson v. State,* 793 N.E.2d 1046, 1051–52 (Ind.Ct.App. 2003). In other words, the prejudice must be such that our confidence in the outcome of his appeal is undermined. *Thomas v. State,* 797 N.E.2d 752, 754 (Ind.2003).

Henley argues appellate counsel was ineffective because he did not challenge the summary denial of Henley's request that standby counsel deliver closing arguments. We agree.

 When a *pro se* defendant requests a change from self-representation to counsel-representation, the trial court should consider the following factors:

(1) defendant's prior history in the substitution of counsel and in the desire to change from self-representation to counsel-representation; (2) the reasons set forth for the request; (3) the length and state of the trial proceedings; (4) disruption or delay which reasonably might be expected to ensue from the granting of such motion; and (5) the likelihood of defendant's effectiveness in defending

against the charges if required to continue to act as his own attorney.

*Koehler v. State,* 499 N.E.2d 196, 199 (Ind. 1986) (adopting test from *People v. Elliott,* 70 Cal.App.3d 984, 139 Cal.Rptr. 205 (1977)). After applying these factors to the case before it, the *Koehler* court described the Sixth Amendment right to counsel as follows:

> The purpose of the Sixth Amendment guarantee of representation is to protect an accused from conviction resulting from his own ignorance of his legal and constitutional rights and to assure him the guiding hand of counsel at every step in the proceeding. *Johnson v. Zerbst,* 304 U.S. 458 [58 S.Ct. 1019, 82 L.Ed. 1461] (1938). The policy underlying the correlative right of self-representation is personal autonomy; the defendant is the one who must suffer the consequences of his decision as to counsel, so he is entitled to choose his advocate—a lawyer or himself. *Faretta v. [California] United States,* 422 U.S. 806 [95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) ]. In this case, Koehler belatedly recognized his own inadequacy as defense attorney and sought to forestall further damage by abandoning his own defense and relying instead on trained counsel.
>
> It would be illogical to bar all opportunity for reasserting one's right to counsel once a defendant realizes his mistake in proceeding *pro se.* Such action would amount to closing the exits to a maze once the defendant admits he is lost within it.

499 N.E.2d at 199 (parallel citations omitted). The holding in *Koehler* was limited "to the rather special situation in which a defendant with standby counsel already at his side desires to turn over his defense under circumstances which do not disadvantage any of the other participants in the trial." *Id.* at 199–200. Reassertion of the right to counsel "at a natural break in the proceedings" also weighs in favor of granting the request. *Id.* at 200.

▮ When denying Henley's request for Vowels to present closing argument, the trial court did not consider the *Koehler* factors; rather it simply denied Henley's request. Henley correctly notes we have held a trial court's failure to consider the *Koehler* factors when ruling on a *pro se* defendant's request for counsel is reversible error. *See Stamper v. State,* 809 N.E.2d 352, 355 (Ind.Ct.App.2004) (failure to consider *Koehler* factors reversible error).

▮ However, when judging the reasonableness of appellate counsel's strategic decisions, we look to the state of the law when the brief was filed. *Williamson v. State,* 798 N.E.2d 450, 454 (Ind.Ct.App. 2003), *reh'g denied, trans. denied* (Ind. 2004). *Stamper* was decided nearly five years after counsel filed briefs in Henley's appeal. Nevertheless, *Stamper* was based on dicta in a decision handed down nine years before Henley's direct appeal—*Dowell v. State,* 557 N.E.2d 1063 (Ind.Ct.App. 1990), *trans. denied, cert. denied* 502 U.S. 861, 112 S.Ct. 181, 116 L.Ed.2d 143 (1991).

In *Dowell,* we concluded the trial court abused its discretion in summarily denying a defendant's request to have standby counsel conduct his closing argument, but we reversed Dowell's conviction on other grounds.[12] Dowell represented himself at his trial on forgery and theft charges. "Prior to his closing argument, Dowell re-

---

12. Dowell's conviction was reversed because he did not knowingly, intelligently and voluntarily waive his right to counsel. "Although not necessary to our decision, we address[ed] Dowell's final argument that the court erred when it refused to allow his stand-by counsel to conduct the closing argument." *Dowell,* 557 N.E.2d at 1067.

quested that his advisory counsel be permitted to conduct the final summation." 557 N.E.2d at 1065. "It does not appear from the record that the trial court considered the [*Koehler*] factors or even asked Dowell what his reasons were for the request." *Id.* at 1068. "Dowell ... was entitled to a consideration of the [*Koehler*] factors ... upon a ruling on his request. The trial court abused its discretion in summarily denying Dowell's request for stand-by counsel to conduct the closing argument." *Id.* Given the similarities between the *Dowell* facts and those before us, Henley's convictions would likely have been reversed on appeal had his appellate counsel properly raised this issue. Thus, the issue was significant and obvious.

This issue was also clearly stronger than the other issues in the appellate brief. The failure to cite legal authority or present cogent argument resulted in the waiver of four issues: 1) whether the evidence was sufficient to support the jury verdicts; 2) whether the trial court erred in granting a motion to produce handwriting exemplars; 3) whether the trial court abused its discretion by admitting evidence and testimony regarding a letter; and 4) whether the trial court erred by refusing to give the jury instructions tendered by Henley. We addressed five issues: 1) whether Henley's waiver of counsel was knowing, intelligent and voluntary; 2) whether the trial court abused its discretion in denying his motion for a continuance; 3) whether the trial court abused its discretion in denying his motion for change of venue; 4) whether the trial court erred by requiring Henley to wear the stun belt; and 5) whether Henley was prejudiced by improprieties in the prosecutor's closing argument.

Of these five issues, one (prosecutorial misconduct) was waived because Henley failed to object at trial, and another (change of venue) was decided against Henley because he failed to present any evidence at trial. Two (motion for continuance and stun belt) were reviewed under the deferential abuse of discretion standard. With respect to the ninth issue, the trial court had an extended colloquy with Henley regarding the dangers of self-representation, which advisement was constitutionally adequate.[13] A *Koehler–Dowell*

---

13. The trial court was unaware of Henley's mental retardation during this advisement. Whether the trial court's warning would have been adequate if it had known of Henley's mental limitations is a question we leave for another day. We are confident Henley's mental limitations will be addressed on retrial.

Although the image of a mentally retarded *pro se* defendant wearing a stun belt and facing three Class A felonies, three Class B felonies, and a Class D felony in an Indiana courtroom is a troubling one, we note that prior to the amended PCR petition filed by appointed counsel in May 2004, Henley had informed neither the court nor counsel of his mild mental retardation. Indeed, Henley misrepresented his level of education, indicating he had attended some college, and failed to disclose he was receiving Social Security disability benefits. This further impeded the trial court's ability to recognize this potential issue.

Dr. David Cerling evaluated Henley in January 2004 and testified at the PCR hearing. His report indicated Henley had been evaluated for mental retardation in 1978 at age 11 and in 1990 at age 23 and, at the time of his offenses and trial, Henley was receiving Social Security disability payments because of his mental retardation. Dr. Cerling's testing indicated Henley has an IQ of 64 and his "adaptive functioning in several [specified skill] areas is severely limited." (PCR Ex. 1.) He concluded Henley was mildly mentally retarded, but stated: "[I]f I had made a guess based on his verbal interaction, I would not have thought that [Henley] is in the range of mild mental retardation, just based on my one-to-one verbal interactions with him." (PCR Tr. at 16.)

Mental retardation has three essential features: 1) significantly subaverage general intellectual functioning; 2) significant limitations in adaptive functioning in at least two specified skill areas; and 3) onset before age

claim would have been stronger than any of those raised issues because the failure to consider the *Koehler* factors would have been sufficient, under the dicta in *Dowell,* to require reversal. *See Stamper,* 809 N.E.2d at 355 (holding, based on Dowell, that failure to consider *Koehler* factors was reversible error).

When Henley's appellate counsel testified at the PCR hearing, he did not indicate a strategic reason for not mentioning this issue other than to say it "was subsumed again in the entire *pro se* argument." (PCR Tr. at 113.) In the absence of a reasonable strategic explanation, the failure to raise a significant and obvious issue that was stronger than the other issues raised amounts to deficient performance.

A defendant asserting ineffective assistance of appellate counsel must also demonstrate appellate counsel's deficient performance resulted in prejudice, that is, there is a reasonable probability that, but for counsel's unprofessional errors, the result of the direct appeal would have been different. *Thompson,* 793 N.E.2d at 1051–52.

■ At oral argument, the State suggested Henley could not show prejudice because application of the *Koehler* factors does not lead unerringly to the conclusion opposite that reached by the trial court, namely that Henley's request for Attorney Vowels to deliver the closing argument should have been granted. We agree that, had the trial court considered the *Koehler*

factors prior to denying Henley's request, we would review the denial on its merits for an abuse of discretion. Under those circumstances, Henley would need to demonstrate the trial court's denial of his request was erroneous in order to demonstrate prejudice.

■ That is not the case before us, however. As noted previously, when a *pro se* defendant with stand-by counsel reasserts his right to counsel, *Koehler* requires the trial court make some inquiry. The failure to make such an inquiry is an abuse of discretion. *Stamper,* 809 N.E.2d at 355; *see also Dowell,* 557 N.E.2d at 1068. In other words, the trial court did not abuse its discretion by erroneously denying Henley's request for standby counsel to make closing arguments, but by summarily denying the request.

■ Because Henley was entitled to consideration of the *Koehler* factors when the trial court ruled on his request, *see Dowell,* 557 N.E.2d at 1068, the summary denial of his request constitutes reversible error and an erroneous denial of counsel. *See Stamper,* 809 N.E.2d at 355 ("In the case at bar, we first note that there is no indication in the record that the trial court considered the *Koehler* factors. This alone supports reversal.") In addition, erroneous denial of counsel is a structural error, making a harmless error review inappropriate. *United States v. Gonzalez–Lopez,* 548 U.S. ——, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006).[14] Accordingly, we conclude there is a reasonable probability Henley's conviction would have

---

18. *Atkins v. Virginia,* 536 U.S. 304, 308 n. 3, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002) (citing *Diagnostic and Statistical Manual of Mental Disorders* (4th ed.2000)). Mild mental retardation is typically used to describe individuals with an IQ between 50 and 70. *Id.*
 In light of Dr. Cerling's testimony regarding the level of Henley's verbal interactions, it is not surprising the court and counsel did not

correlate Henley's unusual or uncooperative behaviors with possible mental retardation.

14. Cuauhtémoc Gonzalez–Lopez was charged with conspiracy to distribute marijuana, and he sought to have Attorney Joseph Low represent him. The District Court would not admit Low *pro hac vice* because it erroneously believed Low had violated a rule of professional conduct in a separate matter. Another attor-

been reversed under *Dowell* and the case remanded for a new trial if the *Koehler* issue had been raised on appeal. This is sufficient to satisfy the prejudice prong of *Strickland* and *Bieghler.*

## CONCLUSION

Counsel's failure to raise a *Koehler–Dowell* claim on appeal constitutes deficient performance and prejudice to Henley. Because Henley received ineffective assistance of appellate counsel, we reverse and remand for a new trial.

Reversed and remanded.

FRIEDLANDER, J., and CRONE, J., concur.

ney represented Gonzalez–Lopez at trial, and after being convicted, Gonzalez–Lopez appealed.

The Supreme Court noted the Sixth Amendment guarantees criminal defendants the right to assistance of counsel. One aspect of this right, for a non-indigent defendant, is the right to choose who will represent him. *Gonzalez–Lopez,* 548 U.S. at ——, 126 S.Ct. at 2561. After determining Gonzalez–Lopez had been erroneously deprived of his counsel of choice, the High Court considered whether this constitutional error was subject to harmless error review. Two types of constitutional errors were discussed—trial error and structural error. Trial errors occur during the presentation of the case to the jury and may "be quantitatively assessed in the context of other evidence presented in order to determine whether [they were] harmless beyond a reasonable doubt." 548 U.S. at ——, 126 S.Ct. at 2563–64. Structural defects, on the other hand, "defy analysis by harmless-error standards because they affect the framework within which the trial proceeds and are not simply an error in the trial process itself." 548 U.S. at ——, 126 S.Ct. at 2564 (internal quotations omitted).

We have little trouble concluding that erroneous deprivation of the right to counsel of choice, "with consequences that are neces-

sarily unquantifiable and indeterminate, unquestionably qualifies as 'structural error.'" ... It is impossible to know what different choices the rejected counsel would have made, and then to quantify the impact of those different choices on the outcome of the proceedings. Many counseled decisions, including those involving plea bargains and cooperation with the government, do not even concern the conduct of the trial at all. Harmless-error analysis in such a context would be a speculative inquiry into what might have occurred in an alternate universe.

548 U.S. at ——, 126 S.Ct. at 2564–65.

*Gonzalez–Lopez* addresses the right of a non-indigent defendant to have counsel of his own choosing; Henley, as an indigent defendant, does not have an absolute right to counsel of his own choosing. *See Morris v. Slappy,* 461 U.S. 1, 23 n. 5, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983). Whether indigent or not, however, Henley has a continuing right to assistance of counsel.

We conclude the erroneous denial of a reassertion of the right to counsel is not subject to a harmless error review because the framework of the trial may be affected similarly whether the defendant is erroneously denied counsel initially or at a later stage of the proceedings.