

FILED

Jul 31 2019, 10:37 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Alan K. Wilson
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Samuel J. Dayton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Quintin D. E. Davis,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

July 31, 2019

Court of Appeals Case No.
19A-CR-631

Appeal from the Delaware Circuit
Court

The Honorable Marianne Vorhees,
Judge

Trial Court Cause No.
18C01-1801-F6-21

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Quintin D.E. Davis (Davis), appeals his conviction for domestic battery, a Class A misdemeanor, Ind. Code § 35-42-2-1.3(a)(1).

We affirm.

# ISSUE

Davis presents this court with one issue on appeal, which we restate as: Whether the trial court abused its discretion by denying Davis' request for appointment of counsel made during the bench trial and more than one year after affirming his request for self-representation.

# FACTS AND PROCEDURAL HISTORY

Davis and L.W. met at their place of employment during June or July 2017. They began dating one month later and in September 2017, they moved into an apartment, together with L.W.'s two children from a previous relationship. On January 1, 2018, Davis and L.W. argued when Davis intended to drink the last bottle of Pepsi. L.W. squeezed the bottom of the bottle, spilling the Pepsi. In response, Davis grabbed her bag of Skittles. When L.W. did not react, Davis banged her phone against the side of the bed and shattered the screen. At that point, L.W. was "ready to leave." (Transcript p. 74). However, Davis apologized and gave L.W. his phone to break, which she did.

The following morning, L.W. started packing her belongings, intending to move out. Davis grabbed L.W.'s cigarettes and they began to argue. He

pushed L.W. and caused her to fall on top of her two-year-old son. When L.W. moved towards her closet, Davis pinned her down and hit her in the face. She fought her way towards the entrance of the bedroom before Davis pinned her arms to her legs. L.W.'s daughter, who was down the hall, started crying. L.W. managed to free herself by biting Davis' chin and she escaped to the neighbor's apartment where she called 911. After making the call, she returned to the apartment and Davis and L.W. began "going at it again." (Tr. p. 76). Davis grabbed L.W.'s laptop out of her hands and broke it in two pieces. L.W. lost her balance, and fell on a glass table which Davis kicked in an attempt to shatter it. Shortly thereafter, police officers arrived. While the officers attempted to arrest him, Davis talked loudly and used profanity directed at the officers. He tensed his arms, balled his fists, and was non-compliant with the officers' orders.

[6] On January 9, 2018, the State filed an Information, charging Davis with Count I, battery against a public safety officer, a Level 6 felony; Count II, domestic battery, a Class A misdemeanor; and Count III, resisting law enforcement, a Class A misdemeanor. On January 17, 2018, during the pre-trial hearing, Davis informed the trial court that he intended to represent himself. The trial court noted the request and set it for a hearing. On January 24, 2018, the trial court conducted a hearing to address Davis' request to represent himself. Davis advised the trial court that he was twenty-six, had a high school diploma, and had completed some college education. He did not have any learning disabilities, and understood and read the English language. Davis disclosed

that he had never before participated in a jury trial, but had been charged with a Class A misdemeanor in the past. Davis confirmed that although he had the right to have an attorney appointed for him, he wanted to waive that right and instead represent himself. He affirmed that he had made that choice voluntarily and out of his own free will. The trial court proceeded to explain the disadvantages of self-representation versus the advantages of being represented by an attorney, trained in the rules of evidence and procedural mechanisms. Davis acknowledged that he understood the trial court's cautionary advice but wanted to proceed *pro se*. Finding Davis competent, the trial court concluded that he had voluntarily waived his right to an attorney and advised him that "if [he] d[id] want an attorney at any time, all [he] ha[d] to do [wa]s send [the court] a letter, or a motion, and" the trial court would assign Davis an attorney. (Tr. p. 17).

[7] During the pre-trial hearing of September 12, 2018, the trial court enquired after Davis' preferred bench trial date setting, either December 20, 2018 or January 24, 2019. Davis explicitly confirmed the latter date. On November 19, 2018, Davis signed a discovery receipt acknowledging that he had received the charging Information and probable cause affidavit, police reports, witness statements, and videotaped materials on a CD.

[8] On January 24, 2019, the trial court conducted a bench trial. After the State began presenting its evidence, Davis interrupted, requesting a recess because he "didn't even know that we was [sic] coming into trial today." (Tr. p. 37). Upon conclusion of the recess, Davis told the trial court "I'm going to just go

ahead and request for a P.D." (Tr. p. 37). He advised the court "I'm not prepared for this. Not, not right now. I'm just going to, you know, with the – not knowing what to object, I'm just going to go ahead and continue it." (Tr. pp. 37-38). The State objected, noting that Davis knew "since September that this was set. He's the one that wanted to get it done sooner rather than later. I think this is a ploy by [Davis] to come in here. He knows our victim flew in from out of state." (Tr. p. 39). Although Davis informed the trial court that his "anxiety [wa]s through the roof," the trial court denied his request for a public defender, finding that the

> alleged victim has flown in from California. She is here. So I
> will deny the request for continuance and to be able to hire
> counsel. I think this is exactly what the advisement is intended
> to do, is to advise people of the risks of going ahead without an
> attorney. And this was set September 12th, 2018. The notice says
> Bench trial January 24, 2019 at 1:00 p.m. So we're all
> assembled. . . . My ruling is to deny the continuance, deny the
> request for Public Defender.

(Tr. p. 40). At the close of the evidence, the trial court took the matter under advisement.

[9] On February 26, 2019, the trial court issued its judgment, finding Davis guilty of domestic battery, a Class A misdemeanor, but not guilty of battery against a law enforcement officer, a Level 6 felony, and resisting law enforcement, a Class A misdemeanor. The trial court sentenced Davis to pay a fine, court costs, and domestic violence prevention and treatment fee.

[10] Davis now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

[11] Davis contends that the trial court abused its discretion by denying his request for a public defender after the bench trial had started and more than a year after Davis had waived his right to counsel.

[12] The Sixth Amendment of the United States Constitution and Art. I, § 13 of the Indiana Constitution guarantee the right to counsel at any critical stage of prosecution where counsel's absence "might derogate from the accused's right to a fair trial." *United States v. Wade*, 388 U.S. 218, 228, 87 S.Ct. 1926, 1932, 18 L.Ed.2d 1149, 1158 (1967). Correlative to this constitutional right to counsel is the right of a defendant in a criminal proceeding to appear *pro se.* "The right to defend is personal. The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction. It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage." *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562, 581 (1975).

[13] It is within the trial court's discretion to determine whether a defendant may abandon his *pro se* defense after trial has begun and reassert his right to counsel. *Koehler v. State*, 499 N.E.2d 196, 198-99 (Ind. 1986). We will reverse only if we conclude that the trial court abused that discretion. *Id*. In *Koehler*, our supreme court identified five factors to be considered by a trial court in order to exercise meaningful discretion in ruling on a defendant's request to change from self-

representation to counsel-representation. *Id.* Specifically, the trial court should consider: (1) the defendant's prior history in the substitution of counsel and in the desire to change from self-representation to counsel-representation, (2) the reasons set forth in defendant's request, (3) the length and stay of the trial proceedings, (4) any disruption or delay in the trial proceedings which might be expected to ensue if the request is granted, and (5) the likelihood of defendant's effectiveness in defending against the charges if required to continue to act as his own attorney. *Id.* at 199.

[14] Initially, and reflecting on *Koehler*'s first factor, we note that Davis was fully advised of the dangers and disadvantages of waiving his right to counsel, a full year prior to the commencement of the bench trial. The trial court explained the charges to him and the consequences of proceeding *pro se*. Although Davis acknowledged that he understood the charges and the trial court's cautionary advice, he indicated that he wanted to waive his right to counsel. During this intermediate time leading to trial, Davis did not waiver in his decision to proceed *pro se*. Davis was presented with an option of trial dates and the bench trial was set for the date and time he selected. Davis filed motions and obtained court orders in his favor. Even when the bench trial was convened and the State started its presentation of the evidence did Davis remain silent and proceeded *pro se*. At the commencement of the bench trial, Davis competently—albeit unsuccessfully—addressed the State's addition of a foundational witness. Only during the State's examination of its first witness

did Davis change his mind. After requesting a recess, Davis returned and asked for counsel to be appointed.

[15] Davis' reason for his request to retract his waiver of counsel was his unpreparedness and anxiety. The State objected, referencing the ample opportunity to get prepared as the date of the bench trial had been set four months earlier and the inconvenience to the victim who had flown in from out of state if the case were to be continued. Granting Davis' request would most likely have resulted in a substantial continuance in order for counsel to get familiar with the facts of the case and would have required additional sacrifice from the victim who would have to make an additional trip to Indiana. Although Davis relies on the trial court's statement that he could request an attorney "at any time" to support his contention that he should have been assigned an attorney midway through the bench trial, the trial court tempered that broad statement with the qualifier that Davis had to send the court "a letter or a motion." (Tr. p. 17). Accordingly, unlike Davis' claim, the trial court's option to assign counsel did not span the entire trial after a full year of pre-trial proceedings; but rather appears to be limited to the legal proceedings prior to the commencement of trial. Despite the trial court's denial of his request for counsel, Davis effectively defended against the charges *pro se*. Not only did he manage to impeach the victim during cross-examination, but he also was found not guilty on two of the three charges the State brought against him.

[16] Mindful of the *Koehler* factors, and given the tardiness of Davis' request and the trial court's previous warnings about self-representation, we conclude that the

trial court did not abuse its discretion in denying Davis' midtrial request for appointment of counsel.

# CONCLUSION

[17] Based on the foregoing, we hold that the trial court did not abuse its discretion by denying Davis' request for an attorney made during the bench trial and more than one year after affirming his request for self-representation.

[18] Affirmed.

[19] Vaidik, C. J. and Bradford, J. concur